UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

<u>Patricia Grassick</u>

    **v.**                                    Civil No. 09-cv-587-PB
                                        [DNH Opinion No. 2012 DNH 063]
<u>Eric H. Holder, Jr., et al.</u>

<u>**MEMORANDUM AND ORDER**</u>

Patricia Grassick brings suit against her former employer,
the U.S. Department of Justice ("DOJ"), as well as several of
her former supervisors.  She alleges that defendants violated
numerous federal statutes by discriminating against her on the
basis of her age and disabilities and by retaliating against her
when she attempted to vindicate her rights.  Defendants have
filed a motion to dismiss, which I grant in part for the reasons
described below.

## I.  <u>BACKGROUND</u>

In July 2003, after more than a decade of work in other DOJ
offices, Patricia Grassick commenced a position as an Automated
Litigation Support Specialist ("ALS") at the United States
Attorney's Office ("USAO") for the District of Rhode Island
("DRI").  When Grassick was hired, she was responsible for

creating and managing the litigation support department and training support staff.  She was informally assured that she would not have to work overtime and that, outside of necessary training, she would not have to travel.

Grassick alleges that she is disabled, and asserts that she suffers from fibromyalgia, chronic lower back pain, lumbar degenerative disk disease, and a litany of other medical conditions.[1]  The gravamen of her claim is that, starting in June 2005, her supervisors failed to provide reasonable accommodations for her disability that would have allowed her to perform certain job duties with less pain and fewer absences.  She asserts that her attempts to vindicate her rights led to harassment and retaliation, including disciplinary measures and, ultimately, the termination of her employment in March 2008.  I will briefly recount the facts that are central to Grassick's voluminous complaint.

In June 2005, Grassick asked her supervisors, including United States Attorney ("USA") Robert Clark Corrente and Assistant United States Attorney ("AUSA") Kenneth Madden, if,

---

[1] Grassick states that she also suffers from the following maladies: post-traumatic stress disorder; tinnitus; adjacent segment disease; chest pain; ventricular tachycardia; advanced ventricular ectopy; and carpal tunnel syndrome.

2

due to her inability to sit for extended periods of time, she could be excused from traveling to a trial in Worcester, Massachusetts.  Her request was denied.  Later that year, a memorandum was circulated within the DRI that described the responsibilities of the ALS position, including a requirement that Grassick present evidence at all trials.

Grassick alleges that in July 2005, AUSA Madden created a "drop file" for the purpose of gathering evidence to substantiate the disciplinary actions he intended to take against her.  The following month, AUSA Madden requested that Grassick submit weekly reports.  She complied.

Grassick suffered an exacerbation of her pain symptoms while working in the Rhode Island USAO, and underwent frequent diagnostic and therapeutic procedures during work and non-work hours, including at least two major surgeries in 2006 and 2007. Many of Grassick's numerous requests for modifications to her work and leave schedule were denied.  AUSA Madden, beginning in August 2005, told Grassick that he would not grant her requests for advanced sick leave and directed her instead to request leave without pay under the Family Medical Leave Act for her medical appointments and procedures.  That requirement led

Grassick to exhaust such leave prior to her termination.

In April 2006, and again in August 2006, Grassick requested that she not be required to work overtime.  AUSA Madden denied both requests.

In June 2007, Grassick submitted a physician's note to her supervisors stating that she should not be required to present evidence at trials because the symptoms of her fibromyalgia had worsened and she was unable to sit for more than 15 minutes at a time.  Grassick maintains that she had not intended to ask to avoid trial presentation duties, and that she only sought to be accommodated at the times when her pain was unmanageable and unbearable.  DOJ officials, however, understood her submission to be a formal request for an accommodation to be relieved of her trial duties.  Grassick was asked to fill out certain official forms; she did not, and her request for accommodation was denied in July 2007.

That same month, Grassick proposed that, if she had to attend trials, AUSAs should be required to ask the court for leave to permit her to alternate between sitting and standing. Alternatively, she suggested that other trained staff could attend trials in her stead, or agents attending the trials could

be trained to present evidence.  The DOJ determined that her
proposals were not viable.

In February 2008, Grassick was hospitalized for an
anxiety/pancreatitis attack.  Her request for 80 hours of leave
without pay was denied, and she was deemed absent without leave.
The following month, Grassick's employment was terminated.  The
removal letter noted Grassick's excessive absences, her absences
without leave, and her inability to perform the essential job
function of presenting at trials.

During her employment at the Rhode Island USAO, Grassick
filed several formal Equal Employment Opportunity ("EEO")
complaints based on various actions she characterized as
discriminatory or retaliatory.  She also contacted her elected
representatives and other government officials to complain, and
several of those officials followed up with inquiries on her
behalf.  Grassick alleges that DOJ officials harassed and
disciplined her in response to her EEO complaints and official
contacts.

Grassick appealed her discharge unsuccessfully through the
Merit Systems Protection Board ("MSPB") and obtained a final
decision in November 2009.  On December 4, 2009, Grassick

brought suit in federal court in Rhode Island.  Due to the recusal of the judges in that district, the case has been referred to the District of New Hampshire.

## II.  **STANDARD OF REVIEW**

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), I "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor and determine whether the complaint, so read, sets forth facts sufficient to justify recovery on any cognizable theory." Martin v. Applied Cellular Tech., 284 F.3d 1, 6 (1st Cir. 2002).  To survive a motion to dismiss for failure to state a claim, the general standard under Rule 8 of the Federal Rules of Civil Procedure is that the complaint must "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

6

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (citations omitted).

When a plaintiff acts pro se, this court is obliged to construe the pleadings liberally in favor of the pro se party. See Ayala Serrano v. Lebron Gonzales, 909 F.2d 8, 15 (1st Cir. 1990) (citing Estelle v. Gamble, 429 U.S. 97, 106 (1976)). That review ensures that pro se pleadings are given fair and meaningful consideration. See Eveland v. Dir. of C.I.A., 843 F.2d 46, 49 (1st Cir. 1988).

### III.   ANALYSIS

Grassick alleges that the DOJ violated the Rehabilitation Act, 29 U.S.C. § 794 et seq., the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., the Whistleblower Protection Act ("WPA"), Pub. L. No. 101-12, 103 Stat. 16 (1989) (codified in scattered sections of 5 U.S.C.), and the Notification and Federal Employee Anti-Discrimination and Retaliation Act ("No FEAR Act"), Pub. L. No. 107-174, 116 Stat. 566.  She also alleges that the individual defendants are

liable for a civil conspiracy under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

The DOJ has not sought to dismiss the claims brought under the Rehabilitation Act and the ADEA.[2]  In its motion papers, the DOJ asserts, and Grassick concedes, that the No FEAR Act does not create a private right of action.  See Glaude v. United States, 248 F. App'x 175, 177 (Fed. Cir. 2007); Baney v. Mukasey, No. 3:06-CV-2064-L, 2008 WL 706917, at *7 (N.D. Tex. Mar. 14, 2008).  Grassick also moves to voluntarily dismiss her APA claims against the DOJ.  Pl.'s Opp'n to Defs.' Mot. to Dismiss at 9, Doc. No. 33-1.  I turn to the remaining claims.

## A.  **Whistleblower Protection Act**

Defendants argue that the court should dismiss Grassick's WPA claims, insofar as Grassick fails to plead facts showing that she exhausted her administrative remedies before the MSPB. Additionally, defendants assert that the Federal Circuit, and not this court, has jurisdiction to review Grassick's whistleblower claims.  Grassick maintains that she exhausted her

---

[2] In their motion for summary judgment, defendants assert that the Rehabilitation Act and ADEA claims cannot lie against the individual defendants.  Grassick responds by clarifying that she has only sued the DOJ, and not the individual defendants, under those statutes.  See Pl.'s Opp'n to Mot. to Dismiss at 2, Doc. No. 33-1.

MSPB remedies and that this court has jurisdiction over her claims.

The WPA protects certain federal employees from agency reprisals for whistleblowing activities.  Employees believing they have been discharged in reprisal for whistleblowing must exhaust their administrative remedies through the Merit Services Protection Board ("MSPB" or "Board") by filing an action on their own in the MSPB, see 5 U.S.C. § 1221(b); 5 C.F.R. § 1209.2(b)(2), or by requesting that the Office of Special Counsel initiate such an action.  See Stella v. Mineta, 284 F.3d 135, 142 (D.C. Cir. 2002) (WPA requires employee to exhaust administrative remedies in MSPB before seeking judicial review).

The MSPB has jurisdiction over federal employees' appeals of job terminations that are alleged to have violated the WPA, the ADEA, and the Rehabilitation Act.  See Chappell v. Chao, 388 F.3d 1373, 1375 (11th Cir. 2004) (MSPB can entertain appeals in cases where employees raise discriminatory discharge claims); see also Amirmokri v. Dep't of Energy, 310 F. App'x 410, 412 (Fed. Cir. 2009) (MSPB has jurisdiction over cases in which employee asserts that discharge was in violation of WPA).  Cases before the MSPB that include both discrimination claims and

nondiscrimination claims are referred to as "mixed cases."  See
Chappell, 388 F.3d at 1375; Amirmokri, 310 F. App'x at 412.  "In
a mixed case, a final decision from the MSPB exhausts an
employee's administrative remedies and allows [the employee] to
seek judicial review."  Chappell, 388 F.3d at 1375.

In an MSPB case involving claims of discrimination as well
as other types of claims, after the MSPB issues a final
decision, the employee has the option to file a petition for
Equal Employment Opportunity Commission ("EEOC") review of the
discrimination claims, file a district court action, or waive
the discrimination claims and file an appeal in the Federal
Circuit.  Baker v. Sec'y, U.S. Dep't of Transp., No. 11-12853,
2012 WL 205770, at *3 (11th Cir. Jan. 25, 2012) (citing 5 C.F.R.
§ 1201.157).  The district courts have jurisdiction over mixed
cases, in which the underlying MSPB case involved both
employment discrimination claims and WPA claims. See Kelliher v.
Veneman, 313 F.3d 1270, 1274 (11th Cir. 2002).

Exhibits to the original complaint (Doc. No. 1) filed in
this court show that Grassick filed an appeal of her termination
in the MSPB, and in that appeal, she asserted violations of the
ADEA, the Rehabilitation Act, and the WPA.  See, e.g., Ex. A to

Compl., Doc. No. 1 (Grassick v. DOJ, No. PH-0752-08-0431-I-2,
Initial Order (MSPB Oct. 3, 2009)).  On October 3, 2009, an MSPB
administrative judge affirmed Grassick's termination from the
DOJ, rejecting both her employment discrimination and
whistleblower claims.  Id.  That decision became final on
November 7, 2009.  Grassick filed her complaint in this case on
December 4, 2009, within 30 days of the final MSPB decision.
See 29 C.F.R. § 1614.310(b) (action must be filed in district
court within 30 days of MSPB's final decision if employee has
not filed petition for EEOC review).

     In light of the exhibits filed by plaintiff with her
original complaint, it is apparent that Grassick has exhausted
her administrative remedies in the MSPB for the claims at issue.
Accordingly, this court has jurisdiction over her WPA claims and
I deny defendants' motion to dismiss those claims.

**B.   Civil RICO**

     Grassick alleges that the individual defendants engaged in
a RICO conspiracy "to prevent, hinder, delay, dissuade,
obstruct, discourage, discredit, silence, harass, intimidate,
marginalize, bully, retaliate against, and punish [her] for any
criticism [she] brought against DOJ officials," and to "create

11

undue financial hardship for [her] . . . to discourage [her]
from pursuing legal remedies." Compl. ¶¶ 126-27, Doc. No. 7-2.
She asserts that the individual defendants conspired to commit
the following predicate crimes to effectuate their scheme:
witness tampering and retaliation, mail and wire fraud, and
extortion.  She further alleges that the racketeering scheme was
intended to defraud her and cause injury to her business and
property "by interfering with [her] right to earn wages in her
chosen profession as a DOJ Automated Litigation Support
Specialist[.]"  Id. ¶ 129.

Defendants present several arguments for dismissing
Grassick's RICO claims.  I find persuasive their argument that
Grassick has failed to show that her termination was the
proximate result of a RICO predicate act.  Because that argument
is dispositive and deprives Grassick of standing to maintain a
RICO claim, I need not reach defendants' other arguments.

### 1.  Civil Actions under RICO

The RICO statute creates a cause of action for an
individual whose property or business has been injured by a
defendant's violation of 18 U.S.C. § 1962, which prohibits
racketeering activity and conspiring to commit racketeering

12

activity.  18 U.S.C. §§ 1962(c)-(d), 1964(c).  RICO's civil remedy provision is one means by which the statute promotes its goal of "seeking the eradication of organized crime in the United States." Beck v. Prupis, 529 U.S. 494, 496 (2000) (citation omitted).

To be civilly liable under § 1962(c), a named defendant must have participated in the commission of two or more predicate crimes. Kenda Corp. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 233 (1st Cir. 2003); Miranda v. Ponce Fed. Bank, 948 F.2d 41, 45 (1st Cir. 1991).  The prohibited acts of racketeering activity are listed at 18 U.S.C. § 1961(1), and include witness tampering and retaliation, mail and wire fraud, and extortion.  A RICO plaintiff must show that an enumerated predicate act caused the complained-of injuries. See Beck v. Prupis, 529 U.S. at 504-07 (predicate act must cause damages even when plaintiff brings suit based on alleged violation of conspiracy provision of § 1962(d)); Miranda v. Ponce Fed. Bank, 948 F.2d at 48-49.  The predicate act must be the proximate cause of those injuries, not only the cause-in-fact. Hemi Group, LLC v. City of New York, 130 S.Ct. 983, 989 (2010); Camelio v. Am. Fed., 137 F.3d 666, 670 (1st Cir. 1998).

## 2.  **Analysis of Alleged Predicate Crimes**

Grassick frames the adverse personnel actions instituted against her as violations of RICO predicate crimes.  Her attempts to do so, however, are conclusory and inadequate.  The overwhelming majority of the actions that she characterizes as RICO predicate offenses are not, and the few that might be RICO predicates did not proximately cause the damages she suffered.

Grassick's complaint contains a sprawling table that spans more than ten pages.  The table lists each adverse action taken against her, and then, without any explanation, lists the RICO predicate alleged to have been violated.  For example, the first row of the table indicates that on June 15, 2005, USA Corrente and AUSA Madden "[i]gnored medical information Plaintiff provided regarding her disability."  Compl. ¶ 150(a), Doc. No. 7-2.  The adjacent box lists witness intimidation and witness retaliation as the offenses committed by that conduct.  Id.  The entire table includes sixty-four separate occurrences that Grassick alleges constitute crimes under RICO.

The RICO predicate offenses asserted by Grassick are witness tampering (18 U.S.C. § 1512), witness retaliation (18 U.S.C. § 1513), mail fraud (18 U.S.C. § 1341), wire fraud (18

14

U.S.C. § 1343), and extortion (R.I. Gen. Laws § 11-42-2).  Based
on her involvement in EEOC administrative proceedings -- during
which she presumably testified on her own behalf -- Grassick
asserts that a plethora of adverse workplace actions by
defendants constitute witness tampering and/or witness
retaliation.  Where defendants' actions are alleged to involve
false statements and/or the use of mail or email, Grassick
asserts that defendants committed mail fraud and wire fraud.
Where the actions involved a supervisor who threatened
discipline or demanded that Grassick perform work she thought
outside of her job description, Grassick alleges extortion.

     Like many other plaintiffs before her, Grassick attempts to
stretch the RICO statute to reach "well beyond the bounds of the
law's reasonable construction . . . .  RICO simply was not
designed by Congress to encompass many of the creative, and even
'extraordinary, if not outrageous uses' for which plaintiffs
have labored the statute."  Gross v. Waywell, 628 F.Supp. 2d
475, 480-81 (S.D.N.Y. 2009) (quoting Sedima, S.P.R.L. v. Imrex
Co., Inc., 741 F.2d 482, 487 (2d Cir. 1984), rev'd on other
grounds, 473 U.S. 479 (1985)).  Here, with limited exception,
Grassick's complaint reveals a classic employment claim, in

15

which an employer is alleged to have discriminated and retaliated against an employee on the basis of her disability, age, and whistleblowing activities.  That Grassick was pursuing administrative remedies in proceedings where she was a witness does not cause her garden-variety allegations of employment discrimination to become a witness tampering or witness retaliation criminal offense.  That her supervisors used mail and email and made statements she believes untruthful does not turn those employment claims into mail and wire fraud criminal offenses.  And that her supervisors made work demands and threatened discipline does not turn those claims into instances of extortion.  I shall briefly discuss each predicate crime alleged by Grassick.

A common element of the crimes of wire and mail fraud is that an individual must have "devised or intend[ed] to devise any scheme or artifice to defraud." 18 U.S.C. §§ 1341, 1343; see United States v. Stergios, 659 F.3d 127, 132 (1st Cir. 2011) (stating elements of mail fraud); United States v. Czubinski, 106 F.3d 1069, 1073 (1st Cir. 1997) (stating elements of wire fraud). "[T]he words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and

'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" McNally v. United States, 483 U.S. 350, 358 (1987) (quoting Hammerschmidt v. United States, 265 U.S. 182, 188 (1924)).  Grassick fails to sufficiently plead a scheme to defraud.  Her complaint ascribes as fraudulent a number of unconnected statements made by defendants that Grassick believes false, and a number of defendants' allegedly retaliatory/discriminatory actions that involved the use of mail or email.  Grassick fails to allege any deception by defendants that was intended to induce her to act to her detriment.  Especially in light of the heightened standard for pleading fraud under Rule 9(b), see N. Am. Catholic Educ. Programming Found., Inc. v. Cardinale, 567 F.3d 8, 13 (1st Cir. 2009), Grassick has failed to state a viable claim that defendants are criminally culpable for fraud.

Grassick contends that defendants committed the predicate crime of extortion when they: denied requests for changes in her work schedule; ordered her to work at times or places she did not want to; offered a bad faith settlement of her EEO complaints; questioned her medical needs; and terminated her employment after threatening to do so.  These are personnel

17

actions in which a supervisor exercised power over a
subordinate, and whether or not they are prohibited under a
civil remedial scheme, they are not criminal acts. None of the
facts alleged by Grassick indicate that defendants maliciously
threatened her with the extortionate intent necessary to impose
criminal liability under Rhode Island General Law § 11-42-2.
See State v. Price, 706 A.2d 929, 933 (R.I. 1998); State v.
Pule, 453 A.2d 1095, 1097-98 (R.I. 1982).

Grassick's list of acts that constitute the predicates of
witness tampering and retaliation is extensive. She utilizes
her status as a witness in the EEOC proceeding to frame every
action or statement adverse to her interests as an act of
witness tampering and/or retaliation. Specifically, she alleges
that defendants committed those predicate crimes when they:
ignored medical information regarding her disability; created a
drop file and otherwise gathered evidence against her; refused
to accommodate her work alteration and leave requests; ordered
her to submit weekly activity reports; ignored her workplace
accommodation requests; required that she travel outside of
Rhode Island; directed her to work late; placed her personal
information on a hard drive; suspended her; gave false

18

statements to EEOC investigators; sent misleading emails about the state of the EEOC investigation; passed her over for performance awards; threatened her with discipline; made demands for additional medical documentation; failed to follow proper chains of office hierarchy; offered her a reassignment to another office; created records of certain conversations with her; failed to ask for medical expert opinion before making decisions; offered in bad faith to settle her pending claims; withheld forms; did not provide her with sufficient support staff; terminated her employment; stated that they did not want her to return as an employee; and failed to follow proper procedure in the EEOC process.

The only potentially applicable provision of the witness retaliation statute, 18 U.S.C. § 1513, is subsection (e),[3] which imposes liability on a person who retaliates against an individual "for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense[.]" Section 1515(a)(4) defines a "law enforcement officer" as an employee, officer, or

_____

[3] The other substantive provisions of the statute criminalize an individual who retaliates by killing or causing bodily injury. See 18 U.S.C. § 1513(a), (b).

19

agent of the federal government who is "authorized under law to engage in or supervise the prevention, detection, investigation, or prosecution of an offense; or [who is] serving as a probation or pretrial services officer[.]" Although Grassick complains of many adverse actions that she asserts were retaliatory, she has not alleged that she provided information to any individual who fits the statutory definition of a law enforcement officer. Section 1513, therefore, cannot constitute a predicate act for RICO purposes.

Grassick attempts to utilize three different provisions of the witness tampering statute, 18 U.S.C. § 1512, in her efforts to show RICO predicate offenses. I start with her allegations of intimidation under subsection (b). That provision imparts criminal liability on an individual who "knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, **with intent to** . . . (1) influence, delay or prevent the testimony of any person in an official proceeding; (2) cause or induce any person to [] withhold testimony, or withhold a record, document, or other object, from an official proceeding . . .; or (3) hinder, delay, or prevent the

communication to a law enforcement officer or judge of the
United States of information relating to the commission or
possible commission of a federal offense."  18 U.S.C. § 1512(b)
(emphasis added).

The problem with Grassick's allegations of a violation of
subsection (b) is that not a single box in her table of wrongful
conduct provides any basis to conclude that the adverse
employment actions taken against her were connected to her
status as a witness before the EEOC or MSPB.  She presents no
facts at all from which one might infer that the defendants
possessed the intent to: influence her testimony or the
testimony of another, cause her or anyone else to withhold
testimony or records, or affect the communication of information
about a federal offense.  Because intent is an element of the
offense, Grassick has failed to sufficiently allege facts to
support the use of subsection (b) as a predicate offense for
RICO.  See Arthur Andersen LLP v. United States, 544 U.S. 696,
708 (2005) (holding that there must be a nexus between
obstructive act and proceeding wherein alleged violator has "in
contemplation" the "particular official proceeding" he intends
to obstruct); United States v. Misla-Aldarondo, 478 F.3d 52, 69

(1st Cir. 2007) ("What's necessary is that there be sufficient evidence that the defendant knew that an official proceeding had begun, or that he believed one to be likely in the future, and that he intended to influence any possible testimony in that proceeding.").

Her use of subsection (d) as a predicate fails for similar reasons. Under 18 U.S.C. § 1512(d), a person who "intentionally harasses another person and thereby hinders, delays, prevents, or dissuades any person from . . . attending or testifying in an official proceeding . . . or attempts to do so" has committed a crime. Grassick specifies the instances she believes constitute intentional harassment as including: the placement of a memo with sensitive information on a public hard drive; the sending of a leave slip to her personal email address rather than her work address; the withholding of an insurance form; and the use of a work performance meeting to threaten discipline against her. Although these occurrences may amount to harassment, Grassick has not alleged that she, or any other person, was dissuaded from attending or testifying at her administrative hearings. Furthermore, under the attempt provision of subsection (d), a culpable party must intend to dissuade someone

22

from testifying. See United States v. Charette, 220 Fed. App'x 721, 723 (9th Cir. 2007) (reading intent to dissuade into subsection (d)); United States v. Wilson, 796 F.2d 55, 57 (4th Cir. 1986) (discussing precursor statute with same language, and explaining that it covers conduct that does not actually dissuade a person from testifying if the individual is attempting to dissuade). As I have already explained, although Grassick presents sufficient allegations of retaliation, she has failed to allege facts from which I can infer that defendants specifically intended to affect her testimony.

That leaves subsection (c) of 18 U.S.C. § 1512 as the only remaining basis for finding a RICO predicate. Subsection (c) makes it a crime to "corruptly . . . obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so." Grassick's argument for applying this provision relies on four statements defendants made, each in connection with the EEOC proceedings, that she alleges were false or misleading. First, she alleges that USA Corrente "falsely stated, under oath in response to a question from an EEO investigator, that [he] was unaware of any formal written policy for requesting reasonable accommodation[.]" Compl. ¶ 150(u), Doc. No. 7-2. Second, she

alleges that another defendant falsely stated that two employees "were 'clearly not' similarly situated" to her, and "failed to disclose that [an employee] had also been granted advance sick leave and was similarly situated to [her]." Id. ¶ 150(cc). Third, she alleges that two defendants sent a letter "falsely assert[ing] during EEOC discovery that [another defendant] did not propose a reassignment" in July 2007. Id. ¶ 150(jjj). Fourth, she alleges that USA Corrente "falsely testified that he personally observed [her] present evidence" in another proceeding when it was another employee that presented evidence at that proceeding; and that other defendants subsequently failed to correct his false testimony. Id. ¶ 150(kkk).

These alleged misstatements all pertain to relatively minor issues considering the scope of Grassick's claim, and her invocation of them seems more in the nature of a niggling gripe than a weighty claim of corruption or racketeering. She does not allege a covert campaign to deceive an agency so much as a few isolated incidents where defendants' statements were not in accord with her recollection of events. Nonetheless, Grassick has sufficiently alleged in her complaint that certain defendants knowingly provided false statements in their EEOC

24

testimony and to EEOC investigators.   Unlike the claims of
workplace discrimination and retaliation she attempts to frame
as RICO predicates, providing false statements in an agency
investigation or adjudication is outside the paradigm of a
classic employment claim, and may constitute a violation of 18
U.S.C. § 1512(c).[4]

Regardless of whether the allegedly false statements
constitute RICO predicate acts, however, they were not a
proximate cause of Grassick's claimed damages.   Any false
statements would only have been intended to cover up, and not to
cause, the adverse employment actions taken against Grassick.
Moreover, Grassick's damages stem from her termination.
Grassick has not presented any argument for how those statements
proximately caused her termination.   Because the potential RICO
predicates did not proximately cause her damages, they cannot

---

[4] Based on the structure of the statute, in conjunction with the
fact that giving deliberately false testimony is criminalized by
other statutes, see, e.g., 18 U.S.C. § 1623, it is possible that
providing false testimony is not covered under 18 U.S.C. §
1512(c)(2).   See United States v. Kumar, 617 F.3d 612, 619-20
(2d Cir. 2010) ("While the government may be correct that §
1512(c)(2) applies to testimonial evidence, we need not reach
this issue of first impression in this circuit[.]").   But see
United States v. Carson, 560 F.3d 566, 584 (6th Cir. 2009)
(upholding conviction under 18 U.S.C. § 1512(c)(2) for a
defendant who made false statements to a grand jury).

provide her standing to sue under civil RICO.  See Miranda, 948
F.2d at 47.

### 3.  Lack of Proximate Cause Generally

The lack of proximate causation, while especially clear in
the case of false statements unrelated to personnel actions, is
more broadly applicable to the other predicates alleged by
Grassick.  Even assuming that one or more of the numerous
factual allegations that I have determined do not constitute
RICO predicates do, in fact, constitute RICO crimes, Grassick
still has failed to show that any of those offenses proximately
caused her injuries.  Grassick's injuries were caused by her
termination, and the removal of Grassick from her position was a
personnel decision that does not fit under the rubric of witness
tampering, extortion, or fraud.

In the context of an employee who claims to have been
wrongfully terminated, the employee cannot sustain a RICO claim
based on that termination "when the injury itself is not the
result of a predicate act."  Id.  As the First Circuit
recognized two decades ago in Miranda, "The cases are legion
that an employee who is fired for tattling about an employer's
wrongdoing, or for refusing to participate in or conceal an

26

illegal scheme, is not deemed to have been injured by reason of a RICO predicate act." Id. at 49. The court in Miranda did, however, leave the door ever so slightly ajar for a jilted employee: "While it may be theoretically possible to allege a wrongful discharge which results directly from the commission of a RICO predicate act . . . any such safe harbor would be severely circumscribed." Id. at 47; see also Camelio, 137 F.3d at 672 (quoting that statement from Miranda and finding that the plaintiff's claims were "well outside of any safe harbor that may exist").

Grassick seizes upon that dictum, and contends that unlike Miranda, where the plaintiff "was terminated for refusing to participate in a scheme of obstruction of justice; the allegations here are that defendants terminated plaintiff as **part of** their scheme to obstruct justice." Pl's Opp'n to Mot. to Dismiss at 22, Doc. No. 33-1. Grassick's attempt to distinguish the facts of her case, however, is unavailing. Although she may have been wrongfully fired for discriminatory and/or retaliatory reasons, her complaint provides no plausible rationale to conclude that the act of terminating her employment was fraudulent or extortionate, or was intended to obstruct

27

justice or affect her as a witness.  In sum, even if Grassick
has sufficiently pled the existence of RICO violations other
than the false statements, she still would not have standing to
bring a RICO claim because the injury she suffered -- loss of
employment -- was not proximately caused by a RICO predicate
act.

As a final comment, I note that Grassick has not cited, nor
has my research unearthed, any case in which a plaintiff was
successfully able to maintain a RICO claim on similar facts.
There may yet be a case of employment discrimination and
retaliation that proves the exception, but the theories on which
Grassick relies in this action are deficient.  It cannot be that
any cause of action based on discrimination or retaliation
becomes a RICO vehicle when an employee pursues available agency
or court remedies and thereby becomes a witness.  And it cannot
be that any such cause of action becomes a RICO vehicle when an
employer threatens to discipline the employee or makes
misleading statements in conjunction with the use of mail or
email.  If these hypotheticals, each stating Grassick's implicit
position, were law, our federal court system would be flooded
with complaints seeking treble damages under RICO for garden-

variety employment claims.   That outcome cannot be what Congress intended when it crafted the civil remedy provision of RICO as a tool to combat organized crime.

## IV.   CONCLUSION

For the reasons above, I grant in part defendants' motion to dismiss (Doc. No. 31).   I dismiss Grassick's claims under the APA, the No FEAR Act, and the civil remedy provision of the RICO statute.   Her claims against the DOJ under the Rehabilitation Act, the WPA, and the ADEA may proceed.

SO ORDERED.


/s/Paul Barbadoro
Paul Barbadoro
United States District Judge


March 28, 2012

cc:   Patricia Grassick, pro se
      Artemis Lekakis, Esq.